IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILLIP EVANS, | ) |
| Plaintiff, | ) Case No. 1:19-cv-04508 |
| | ) Judge John Z. Lee |
| v. | ) |
| PATHWAY MANAGEMENT, LLC d/b/a A PATHWAY TO LIVING and 407 WEST 63rd, LLC, d/b/a ASPIRED LIVING OF WESTMONT, | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendants, PATHWAY MANAGEMENT, LLC d/b/a A PATHWAY TO LIVING and 407 WEST 63rd, LLC, d/b/a ASPIRED LIVING OF WESTMONT, by and through their counsel, Aimee E. Delaney and Leigh Bonsall of Hinshaw & Culbertson LLP, for their Memorandum in Support of Motion for Summary Judgment, state as follows:

**I.   INTRODUCTION**

Plaintiff, a supervisor over kitchen staff at a senior living community, was accused of showing a firearm at work to a subordinate employee. In the course of the investigation of this accusation, Plaintiff admitted he kept his firearm in his vehicle on company premises, a clear violation of a company policy that Plaintiff admits receiving and signing off on. Plaintiff was terminated as a result.

Today, without any admissible evidence, Plaintiff asserts he was unlawfully terminated due to his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. The only evidence he offers in support of this claim are inferences he drew from hearsay

1

conversations of unnamed individuals employed at different facilities. Notwithstanding the fact that this evidence is inadmissible hearsay which cannot be used to defeat summary judgment, the conversations themselves fail to actually support Plaintiff's claim. Further, Plaintiff never reported these conversations to the organization and admits that the decision maker for his termination and his immediate supervisor were not present for any such conversation.

Lastly, Plaintiff's single claim of race discrimination has been brought against two entities that were not Plaintiff's employer. Plaintiff was employed by Pathway Management of Westmont, LLC, an entity not named or pursued in the litigation, nor the underlying charge. Accordingly, because there is no evidence creating a genuine issue of material fact that Plaintiff was terminated because of his race and Plaintiff's claim is not asserted against his employer, summary judgment should be granted in favor of Defendants.

## II. STATEMENT OF FACTS

Defendant Pathway Management, LLC is the parent organization of Plaintiff's employer, Pathway Management of Westmont LLC. (SOF ¶1)[1]. Defendant 407 West 63rd LLC owns the property known as Aspired Living of Westmont, which is a senior living community. (SOF ¶2). By virtue of a Management Agreement dated October 14, 2015, 407 West 63rd LLC contracted with Pathway Management of Westmont LLC to provide management services, which includes managing, supervising and conducting the daily operation of the Aspired Living of Westmont community, including the hire and supervision of any employees. (SOF ¶3). Plaintiff, for example, was paid by Pathway Management of Westmont, LLC. (SOF ¶5).

At the time of his termination in March of 2018, Plaintiff was employed by Pathway Management of Westmont LLC as a Culinary Experience Manager at the Aspired Living of

---

[1] Defendants' Local Rule 56.1 Statement will be referred to as "SOF" throughout this Memorandum.

Westmont community. (SOF ¶6). In this role, Plaintiff supervised ten subordinate kitchen staff members. (SOF ¶16).

When Plaintiff was hired, he was given a policy called "Employee Rules of Conduct" to review and sign. (SOF ¶18). In the Rules of Conduct, an example of misconduct that would not be tolerated is "possessing firearms or other weapons on company property." (SOF ¶19). In addition, Plaintiff received 2017 and 2018 policy handbooks each of which contained a policy called "Zero Tolerance for Violence and Weapons." (SOF ¶20). The "Zero Tolerance" policy states: "All team members are prohibited from using, displaying, or carrying firearms, knives or any other lethal weapons on company property. (SOF ¶21). As specifically defined under the policy, company property included company parking lots. (SOF ¶21).

The 2017 and 2018 handbooks also specify different levels of discipline for different types of conduct including level 1, level 2 and level 3 violations. (SOF ¶22). Possessing firearms or other weapons on company property is a level 3 violation. (SOF ¶23). A level 3 violation "may result in a suspension without pay during which time an investigation into the facts surrounding the violation will be conducted. Team members found to have committed Level 3 violations may have their suspension converted to termination." (SOF ¶24).

On or around February 28, 2018, Robin Pecak, the Executive Director at Aspired Living of Westmont and Plaintiff's supervisor, received an oral report that Plaintiff had shown a subordinate employee his gun in the work place. (SOF ¶26). Robin Pecak thought the allegation was very serious so she informed Lisa Rogers, Director of Human Resources. (SOF ¶27). On or around the same day, Plaintiff recalls coming into work and Eli Ayoub, the Culinary Director, asking him to come into a room with him, Robin Pecak and Lisa Rogers. (SOF ¶28). In this meeting, Plaintiff was asked about his firearm and if he brought it into work and brandished it to

3

anyone. (SOF ¶29). Plaintiff was told to remain off work and that there would be an investigation due to this accusation. (SOF ¶31).

Ms. Rogers conducted an investigation into the allegation against Plaintiff pursuant to the policy regarding level 3 disciplinary violations. (SOF ¶32). As part of the investigation, Plaintiff submitted a written statement on March 1, 2018. (SOF ¶33). In the written statement, Plaintiff admitted that he was aware "that it is against Pathway policy to possess a firearm on the premises" and that he "leave[s] his firearm in his truck." (SOF ¶34). Plaintiff did not appreciate that premises for purposes of the policy including the company parking lot. (SOF ¶36).

Ms. Rogers made the decision to terminate Plaintiff's employment because he admitted to keeping a firearm in his vehicle on premises, a violation of Pathway's "Zero Tolerance" policy and a level 3 violation. (SOF ¶37). A notice of termination signed by Robin Pecak confirmed that "an investigation was completed and it was determined that [Plaintiff] violated the work rule above." The work rule cited above in the notice is a level 3 violation for possessing firearms or other weapons on company property. (SOF ¶43). Plaintiff's termination was effective March 3, 2018. (SOF ¶42).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once established, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). A mere "scintilla of evidence" is insufficient and a plaintiff "must show that there is evidence upon which a jury reasonably could find for [him/her]." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). While a court must accept

the nonmoving party's evidence as true, it is not to draw "inferences that are supported only by speculation and conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). As such, a plaintiff cannot merely "raise some metaphysical doubt as to the material facts; she must come forward with specific facts showing that there is a genuine issue for trial. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Failure to do so entitles the defendant to judgment as a matter of law.

### IV.     ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

#### A.     Defendants were not Plaintiff's Employers Under Title VII.

As a preliminary matter, summary judgment should be granted as Plaintiff failed to sue his employer and has instead pursued his claims against entities which are not his employer. To maintain a cause of action for discriminatory discharge under Title VII, a plaintiff must establish the existence of an employment relationship. *Shah v. Littelfuse, Inc.* Case No. 12-cv-6845, 2013 U.S. Dist. LEXIS 61081, at *8 (N.D.Ill. April 29, 2013) citing *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 380 (7th Cir. 1991) (no liability under Title VII where plaintiff was not an employee of the defendant). *See Shields v. Property Mgmt. One Ltd.,* Case No. 02 C 3712, 2003 U.S. Dist. LEXIS 13498, at *4 (Title VII claim dismissed where there was no employment relationship between the plaintiff and defendant); *Wilcox v. Allstate Corp.,* Case No. 11 C 814, 2012 U.S. Dist. LEXIS 177929, at *32 (N.D. Ill. Dec. 17, 2012*)* (summary judgment granted for defendant because plaintiff could not show that defendant was her employer due to the defendant lacking control over her work).

Plaintiff pursued his administrative charge and this claim against Pathway Management LLC and 407 West 63rd LLC. Neither entity employed Plaintiff and Plaintiff has not developed a record sufficient to support either entity being deemed a joint employer. Defendant Pathway

5

Management, LLC is the parent company of Plaintiff's employer, Pathway Management of Westmont LLC. Defendant 407 West 63rd LLC, as the property owner, contracted with Pathway Management of Westmont LLC to manage the Aspired Living of Westmont facility, which specifically including hiring and employing the employees and running the day to day operation. (SOF ¶¶1-3). Plaintiff has not presented any evidence to support a finding that either named Defendant is his statutory employer or a joint employer with his employer, Pathway Management of Westmont LLC. S*ee Yonan v. U.S. Soccer Fed'n, Inc.,* 833 F.Supp. 2d 882, 891 (N.D.Ill. 2011) (no employment relationship based, in part, on the fact that defendant did not provide the plaintiff's paychecks). Accordingly, because neither defendant was Plaintiff's employer under Title VII, Plaintiff's claim fails.

In addition, Plaintiff did not file a charge with the Equal Opportunity Employment Commission against his employer, Pathway Management of Westmont LLC. (SOF ¶7). Therefore, Plaintiff has not exhausted his administrative remedies in order to assert a Title VII claim against his employer and his claim fails on that basis as well. *See Shields,* 2003 U.S. Dist. LEXIS 13498, at *4 ("A party not named in an EEOC charge cannot generally be sued under Title VII.") citing 42 U.S.C. § 2000e-2(a)(1).

**B.     Plaintiff cannot establish that he was discriminated against on the basis of race in violation of Title VII.**

Even if Defendants are found to be Plaintiff's employer, his discrimination claim fails on the merits. Defendants are entitled to judgment as a matter of law because Plaintiff cannot meet his burden of showing intentional discrimination based on his race (African American) in violation of Title VII. Plaintiff may typically prove discrimination either through the direct method of proof or through the indirect, burden shifting framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). However, as the Seventh Circuit has

clarified, whether evidence is direct or indirect, the legal analysis ultimately boils down to this: whether, considering the evidence as a whole, a reasonable juror could conclude that plaintiff's race caused his termination. *Ortiz v. Werner Enters, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); see also, *McCarthy v. Perdue,* 768 Fed. Appx. 550, 553 (7th Cir. 2019)(confirming in employment discrimination claims, courts no longer distinguish between "direct" or "indirect" evidence, but simply assess whether the evidence permits the factfinder to conclude the protected status caused the discharge).

Based on the record evidence, no reasonable fact finder could conclude Plaintiff's termination was based on his race rather than the admitted policy violation. Plaintiff's claim hangs on the argument of comparative evidence. Specifically, the heart of his discrimination claim is that that non-black employees violated the same policy by keeping their guns in their vehicles while at work, but that these employees were not terminated. Given the absence of any direct evidence, it is not surprising that Plaintiff's claim rests on comparative evidence. However, Plaintiff must have more than mere allegations to get past summary judgment. Having completed discovery, it is apparent that Plaintiff has no admissible evidence to support any claim that similarly situated, non-black employees violated the firearms policy or that any alleged violations of others were known to the relevant decision-maker.

### 1.    Plaintiff has failed to present evidence that any similarly-situated non-black employee of Pathway Management of Westmont LLC violated the firearms policy and was not terminated.

In his attempt to establish comparative evidence, Plaintiff asserted that approximately five non-black colleagues regularly kept their lawful firearms stored in their vehicles while at work in violation of company policy and these non-black colleagues were not terminated. (SOF ¶53). However, Plaintiff does not know the last name of any non-Black employee to which he

refers and confirms that none of the non-Black employees referenced were employees of Aspired Living of Westmont.   (SOF ¶53)   Moreover, Plaintiff's evidence that these five non-black colleagues kept their firearms in their vehicles at the facilities at which each was employed is based exclusively on a casual conversation which occurred during a team meeting of various facility kitchen managers at the offices of a third-party vendor.  (SOF ¶54) When required to give the actual details and substance of the conversations upon which he relies, Plaintiff acknowledges the discussions were of a general nature among gun advocates who discussed owning and possessing firearms generally.  (SOF ¶54).  From these general conversations, Plaintiff inferred that if another individual remarked at carrying their firearm, that it specifically meant that individual had their firearm in their vehicle on facility premises during work hours, in violation of company policy.  (SOF ¶¶ 55, 56, 57, 58).

For example, "Larry," who was not employed at Aspired Living of Westmont and may have been employed at a care facility in Bartlett, stated that he was a concealed carry permit holder and that he had his gun with him at all times, from which Plaintiff admits he inferred this to mean Larry had his gun while on work premises.  (SOF ¶55).  Plaintiff cannot say whether Larry actually ever had his gun in his vehicle at work.  (SOF ¶56).

"Mike," whose last name Plaintiff does not recall and who worked at a Wheaton facility, did not specifically mention having his gun at work, but Plaintiff assumed or inferred from the conversation that he did because Mike said "me too."  (SOF ¶57).  "Steve," whose last name Plaintiff does not recall and whose work facility is unknown, also did not specifically state he had his firearm at work, but generally agreed with the rest of the group.  (SOF ¶58).

The only individual in the group to make a specific statement about having a gun in a vehicle while at work was an unknown individual named "Brad," who worked in Wisconsin,

who made a statement that he sometimes had his shotgun in his truck at work because he would go hunting after work. (SOF ¶59). Plaintiff never made anyone aware of Brad's statements and he never personally saw Brad's gun in his vehicle while at work. (SOF ¶60). Plaintiff never personally saw any of the individuals identified in these conversations with firearms in their vehicles while at a Pathway facility. (SOF ¶61). His sole basis of knowledge are the statements he heard in these conversations.

The only other evidence Plaintiff relies on to support his assertion that non-Black employees kept firearms in their vehicles while at work is based on statements of two other individuals from other facilities who told Plaintiff they believed other managers would carry firearms in their vehicles at work. (SOF ¶62) Plaintiff does not know what these beliefs were based on, the circumstances of how these employees obtained the information, or the managers involved. (SOF ¶62). Lisa Rogers, Robin Pecak and Eli Ayoub were not present for these conversations and Plaintiff did not report these conversations. (SOF ¶63). Plaintiff has no knowledge of any employee at Aspired Living of Westmont who kept their firearm in their vehicle while on premises at work. (SOF ¶65). There are no other statements or conversations that Plaintiff relies on to support his allegation that non-Black employees kept firearms in their vehicles during work hours. (SOF ¶64).

Plaintiff's evidence regarding what the other employees told him at the off-site team meeting and statements made by other individuals regarding other unknown managers who purportedly kept firearms in their vehicles at other facilities is inadmissible hearsay and Plaintiff cannot rely on it to defeat summary judgment. *See Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1265 (7th Cir. 1993)(hearsay statements that are not admissible at trial cannot be relied on to defeat summary judgment); *Carroll v. Yellow Freight Sys.,* 2003 U.S. Dist. LEXIS

16743, at *26 (N.D.Ill. 2003) (plaintiff could not show that similarly-situated employees were treated more favorably because he lacked personal knowledge regarding conduct of the other employees and relied on hearsay evidence regarding what other employees told him) citing *Minor v. Ivy Tech State Coll.,* 174 F.3d 855, 856 (7th Cir. 1999) (a nonmovant cannot rely on hearsay in summary judgment proceedings).

Plaintiff has no personal knowledge of whether any of these individuals did in fact keep firearms in their vehicles at work. (SOF ¶61). Plaintiff also cannot identify the last names of these individuals and none were employed at Westmont. (SOF ¶53) Critically, Plaintiff's testimony does not establish that any of these other employees actually violated the Zero Tolerance policy violated by Plaintiff. Even if this evidence actually established that similarly situated, non-Black employees violated the policy by keeping guns in their cars while parked on work premises, which it does not, Plaintiff cannot establish that Ms. Rogers, as the decision maker, had any knowledge of such. (SOF, ¶38). Additionally, he admits that he never advised Ms. Rogers, Ms. Pecak or Mr. Ayoub prior to his termination that he believed other employees kept guns in their cars on company premises. (SOF, ¶¶39, 40, 41).

> **2. Plaintiff has failed to present evidence that any similarly-situated non-black employee of Pathway Management of Westmont LLC was confirmed following an investigation to have committed a level 3 violation and was not terminated.**

As his only other attempt at establishing comparative evidence, Plaintiff testified that a subordinate employee, "Scott," was not terminated after getting into altercations with another employee and a resident, which Plaintiff believed should have been treated as a level 3 disciplinary violation. *See Stevenson v. United Airlines, Inc.,* 2015 U.S. Dist. LEXIS 57289, at *27 (N.D.Ill. 2015) (allegation unsupported by record evidence and plaintiff's personal beliefs are insufficient to forestall summary judgment) *citing Yancick v. Hanna Steel Corp.,* 653 F.3d

10

532, 548 (7th Cir. 2011) and *McMillian v. Svetanoff,* 878 F.2d 186, 190 (7th Cir. 1989)("subjective beliefs of the plaintiff…are insufficient to create a genuine issue of material fact"). Plaintiff offers this as evidence of disparate treatment because his own violation was a level 3 violation.

Plaintiff lacks admissible evidence regarding Scott's alleged altercations or the discipline he received. Plaintiff did not have personal knowledge of Scott's alleged altercations, did not know if Pathway considered the altercations to be level 3 violations, was not involved in the investigation into Scott's conduct and did not know what discipline he received. (SOF ¶66-67). Plaintiff heard about Scott's conduct from other employees. (SOF ¶68). *See Stevenson,* 2015 U.S. Dist. LEXIS 57289, at *12 (Plaintiff could not rely on "general information" regarding other employees' policy violations as comparative evidence where plaintiff lacked personal knowledge of the alleged violations and relied on hearsay evidence). Plaintiff's testimony regarding Scott lacks foundation and relies on inadmissible hearsay such that it is incapable of defeating summary judgment.

Moreover, Scott was not a similarly-situated employee to Plaintiff, he was subordinate employee who reported to Plaintiff. Plaintiff's actions as a manager are not at all similar to a lower level employee, particularly when that lower level employee is alleged to have committed a different infraction. Employees are similarly-situated if their "performance, qualifications and conduct" are substantially similar. *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000). Employees are generally similarly-situated if "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 618.

Here, Scott is not similarly-situated to Plaintiff because he was Plaintiff's subordinate. (SOF ¶66). Scott reported to Plaintiff whereas Plaintiff reported to the Executive Director for Westmont, Robin Pecak. (SOF ¶¶16, 66). Moreover, Scott did not violate the "Zero Tolerance" policy by possessing a firearm on work property. Scott's purported conduct is therefore not comparable to Plaintiff's and the Scott and Plaintiff are not similarly-situated. (SOF ¶¶42,66). Plaintiff presents no evidence on how the different alleged violations were viewed or treated by his employer. Accordingly, Plaintiff's attempt to establish that he was treated less favorably than a similarly-situated employee based on Scott's purported altercations fails as a matter of law.

### 3. Lastly, applying the more traditional burden-shifting framework, Plaintiff's claim fails.

As Plaintiff has not come forward with any evidence from which a reasonable jury could conclude that he was treated less favorably than similarly situated non-African American employees, the Court need not reach the question of whether Plaintiff was meeting his employer's legitimate performance expectations, or whether the employer's proffered reason for firing him were a pretext for discrimination. *See, Blakely v. Brach & Brock Confections*, 181 F. Supp. 2nd 943, 947 (7th Cir 2002(affirming summary judgment for employer on race discrimination claim), citing, *Blair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997) (The "prima facie case is the condition precedent to pretext analysis."). However, even if this Court was to utilizing the more traditional burden-shifting framework and analyze the remaining elements of Plaintiff's prima facie burden, Plaintiff's claim must still fail as he cannot show that he was meeting the legitimate expectations of his employer, nor would Plaintiff be able to establish pretext. Under the indirect method, Plaintiff must first establish a prima facie case by proving the following elements: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse action; and (4) other similarly

12

situated employees who were not members of his protected class were treated more favorably. *Davis v. Con-Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 784 (7th Cir. 2004).[2] If Plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the termination. *Id.* The plaintiff must then rebut the employer's stated reason for the termination with evidence that it is just a pretext for race discrimination. *Id.*

Plaintiff admitted to committing a level 3 disciplinary violation and violating Pathway's "Zero Tolerance" policy by stating that he kept his firearm in his vehicle. (SOF ¶¶34, 37). This admission precludes him from establishing that he met his employer's expectations. *See Short v. Ultra Foods,* 2008 U.S. Dist. LEXIS 72877, at *18 (N.D.Ill. 2008) (Plaintiff's race discrimination claim failed because plaintiff admitted to violating the employer's policy and therefore could not show she was meeting legitimate expectations); *Crawford v. Ind. Harbor Belt R.R. Co.,* 2005 U.S. Dist. LEXIS 10553, at *(N.D.Ill. 2005) (summary judgment in granted in favor of defendant employer on discrimination claim because plaintiff violated employer's policies).

Notwithstanding the inability to demonstrate he met his employer's expectations, Plaintiff's claim fails under the traditional burden-shifting method for the additional reason that he is unable to establish pretext. "In the context of employment discrimination cases, a pretext is a dishonest explanation for the adverse action." *Rhoads v. Rieth-Riley Constr. Co.,* 2013 U.S. Dist. LEXIS 42223, at *50 (N.D. Ill. 2013). To show that the defendant's proffered reason is pretextual, the plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the defendant] did not act for the asserted non-discriminatory reasons." *Id.* If

---

[2] Section III (B)(1) and (2) *supra* address Plaintiff's failure to satisfy the fourth element of his prima facie burden.

the defendant honestly believed the reasons it gave, the plaintiff's effort to show pretext fails, regardless of whether the reason was "foolish, trivial or baseless." *Id.* citing *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 417 (7th Cir. 2006) ("[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action," a pretext is "a deliberate false-hood").

Plaintiff was terminated due to his possession of a firearm on company property in violation of Pathway's the "Zero Tolerance" policy, a level 3 disciplinary violation. (SOF ¶42). The reason for Plaintiff's termination was confirmed in his contemporaneous notice of termination. (SOF ¶43). Ms. Rogers, the decision-maker, believed Plaintiff had admitted to keeping his gun in his vehicle at work, which violated company policy. Plaintiff lacks any evidence showing that Ms. Roger's decision was a pretext for race discrimination. Therefore, Plaintiff's race discrimination claim fails as a matter of law.

Ultimately, the evidence in this case would not permit a reasonable factfinder to conclude that Plaintiff's race caused his termination. *See Ortiz,* 834 F.3d 760, 765 (7th Cir. 2016). The uncontroverted evidence shows that Plaintiff was terminated due to his possession of a firearm in his vehicle on company property in violation of Pathway's policies. As a result, summary judgment on Plaintiff's Title VII race discrimination claim should be granted.

## V. CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss Plaintiff's claim in its entirety.

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

s/Aimee E. Delaney
One of Defendants' Attorneys

Date: November 16, 2020

Aimee E. Delaney
Leigh C. Bonsall
**HINSHAW & CULBERTSON LLP**
151 N. Franklin St., Suite 2500
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001
adelaney@hinshawlaw.com
lbonsall@hinshawlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on November 16, 2020, I electronically filed this **Certificate of Service** with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system reflecting service of the foregoing document to be served on:

ALL ATTORNEYS OF RECORD

            Hinshaw & Culbertson LLP


            s/ Leigh C. Bonsall
            Leigh C. Bonsall

Aimee E. Delaney
Leigh C. Bonsall
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
adelaney@hinshawlaw.com
lbonsall@hinshawlaw.com